IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
WESTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 18-00252-01-CR-W-GAF |
| | ) | |
| LESLIE LOVE | ) | |
| | ) | |
| Defendant. | ) | |

**SENTENCING MEMORANDUM OF DEFENDANT LESLIE LOVE**

Defendant, Leslie Love, by and through counsel, submits the following Sentencing Memorandum:

**I.    INTRODUCTION**

The Defendant in this cause is a 61-year-old African American male that awaits sentencing before this Honorable Court. His path to this sentencing sadly is a familiar one. He was born in the intercity of Kansas City, Missouri to a single parent. He described his childhood as "not the best" and at times he indicated that his family was on the "brink of starvation". He has four siblings. One of his siblings died from substance abuse, one by murder and one served time in the Federal Penitentiary. Mr. Love's entry to the criminal justice system began at the age of 15 and the journey has included in essence a conviction of bank robbery and related federal charges with intermittent incarcerations in the Federal Bureau of Prisons.[1]

As it relates to the charges in this case, in 2011 while this Defendant was on parole he sought and began receiving Supplemental Aid to the Blind, and he did so well into the calendar year of 2018. This initially was ordered after an examination by a State doctor endorsing such

---

[1] The full criminal history of this defendant is aptly described in the contours of the Pre-Sentence Investigation.

1

aid. Thereafter, on numerous occasions, Mr. Love applied for and received resumption of that aid. In order to receive the aid over the course of time, Mr. Love had to make certain representations which included the following:

1. That he was blind.

2. That he had no employment of any kind.

3. That he owned no vehicles.

4. That the woman he called his common law wife was not related to him and did not live with him.

As indicated from the Government's evidence, some or all of those representations were not true. In particular, the Government possessed evidence that he owned vehicles during this period of time and also during this period of time he lived with his common law wife. The total amount of that fraud was $53,135 over the course of 7 years.

The Government's second theory in the indictment before the Court suggests that Mr. Love committed fraud upon various inmates in correctional facilities representing the fact that he was either a lawyer or a paralegal working for a law firm. It is true that Mr. Love during the time that he has been incarcerated has at times aided in filing *pro se* motions, conducted legal research on his own and has interaction with other inmates. This in and of itself is not unlawful and is commonly done. For decades inmates in various correctional facilities from county jails to the United States prison system have engages in filing *pro se* documents with various courts. The term frequently assigned to these individuals is "jail house lawyers". One of the most famous examples of this circumstance was that James Earl Gideon. Mr. Gideon filed a *pro se* document within the United States Supreme Court that eventually resulted in *Gideon v. Wainwright* which is one of the most important Supreme Court cases involving the criminal

justice system.  Since and before *Gideon* there have been a variety of other individuals involved in litigation from the position of being an incarcerated or ex-incarcerated individual. *Gideon v. Wainwright*, 83 S.Ct. 792, 792, 372 U.S. 335, 337 (1963).  Most noteworthy, in the recent past is that of Shon Hopwood, who was a "jail house lawyer" while serving a 12-year sentence for bank robbery, and who is now a law professor at Georgetown.  In addition to working on his own case while confined in the Federal Bureau of Prisons, he assisted his fellow inmates with their cases, including writing two writs for *certiorari* that the U.S. Supreme Court granted, well before he ever attended law school, or become the member of any bar.  *See,* https://www.law.georgetown.edu/faculty/shon-hopwood/; https://www.cbsnews.com/news/60-minutes-meet-a-convicted-felon-who-became-a-georgetown-law-professor-shon-hopwood-2019-07-21/ .

While the Government's file reveals numerous mailings and lots of solicitation, the only actual times that there were only a limited number of times that money changed hands and the total of that money is believed to be not more than $4,900.  It should also be noted that several states, including Missouri, have declared that a non-lawyer preparing and filing the most basic right of *habeas corpus* on behalf of another person is an exception to any state law statute criminalizing the practice of law by a non-lawyer. *State v. Carroll*, 817 S.W.2d 289, 291 (Mo.App. W.D. 1991) (*citing, Hackin v. State,* 102 Ariz. 218, 427 P.2d 910; *appeal dismissed,* 389 U.S. 143, 88 S.Ct. 325, 19 L.Ed.2d 347 (1967)).  In Mr. Love's case, the Parole Violation hearing transcript via audio recording demonstrates that the U.S. was found to not have demonstrated a violation the law based on Missouri's exception.  He was found to have violated the condition of*, inter alia*, failure to report, and  performing legal work; not a finding that he

violated the law.[2] To some degree, there should be a *res judicata* effect as preclusion may flow down-hill, where the person invoking it has less of a burden; *i.e.*, Mr. Love.

At that time, Mr. Love had already been convicted in pre-guideline Case Nos. 79-00115-01 and 84-00117-01, for which he has been paroled and revoked. The last revocation proceedings were initiated on both cases on with Mr. Love being taken into Marshall's custody on November 1, 2017 for the conduct that forms the basis of the new crime in this case. He has been in continuous custody since November 1, 2017. Mr. Love was obtained on a writ of habeas corpus on September 28, 2018. The parole revocation time expired on August 31, 2019. Thus, at the time of sentencing this Defendant will have served roughly 13 months directly attributable as a matter of law to being detained on the charges before the Court.

In consultation with the probation officer, it was learned that as a matter of law this Defendant will not be given credit towards the ultimate service of the sentence on this indictment based upon the time that he served on the parole revocation – *i.e.*, 22 months from November 2017 through August 31, 2019. This fact and legal conclusion by the PSIR are not disputed and agreed to by the Government. As noted, the bases for commencing the revocation proceedings are the exact same facts and circumstances that are contained in the Government's indictment initiating the new charges in this matter.

---

[2] Charge No. 2 - Law Violation. Illegally Practicing Law.
Charge No. 4 - Law Violation. Illegally Practicing Law.
Charge No. 6 - Law Violation. Illegally Practicing Law.
Basis for the above stated finding(s): Insufficient evidence.

(Discovery at Love 1089).

## II. Sentencing Issues to be Resolved

As in any Federal sentencing this Court must make rulings upon objected to matters within the contours of the Pre-Sentence Investigation. This portion of the Sentencing Memorandum is designed to address those issues. However, counsel wishes to emphasize that because of the unusual nature of this case, that the real discussion that should occur is what is the ultimate sentence that should occur and in what form should that sentence arise. This is based on the circumstances of this Defendant having done a substantial period of time related to the matters before this Court that he is not as a matter of law not receiving credit for. Therefore, it is counsel's belief that the guts of this sentencing should be a discussion of variance and of what degree of variance should occur.

### A. Acceptance of Responsibility.

In this particular case the probation office has chosen not to give this Defendant any points off for acceptance of responsibility. The Government in their sentencing memorandum does not oppose the Court granting acceptance of responsibility, at least to some degree. (Doc. No. 68 at p.4) ("…Love may be entitled to one or two levels for acceptance of responsibility at this Court's discretion").

In short form, without waiving any attorney-client privilege, counsel represents to the Court that the Defendant was certainly in a position to make admissions that would have constituted admissions sufficient to support convictions in the two counts that are part of the agreement between the Government and the Defendant. There were portions of the Government's theme in which counsel felt it would be difficult to make direct admissions. For these reasons, counsel approached the Government about the stipulated trial in an effort to resolve this case. Because of this, much expense and effort was saved by the Defendant accepting the fact that it was likely that he would be convicted and does recognize that there are

5

elements alleged in the indictment that he could easily made admissions to. For these reasons, without opposition from the Government, it is Defendant's position that some acceptance of responsibility should be granted. We hereby suggest that he should be given at least 2 levels.

### B. This Case Is Not a Sophisticated Means

The PSIR and Government attempt to attribute two points to Mr. Love, claiming the fraud in this case was a sophisticated means:

> (10) If …(C) the offense otherwise involved **sophisticated means** and the defendant intentionally engaged in or caused the conduct constituting sophisticated means, increase by 2 levels.

*USSG* §2B1.1(b)(10)(C) (bold added). It, however, was not. This case is run-of-the-mill fraud. Every fraud has some degree of sophistication, otherwise people of ordinary intelligence would not fall for the fraud. For this enhancement, the means of sophistication must be somewhat more than that degree that is involved in a normal, common, everyday fraud. Otherwise, the sentencing commission could have just made all frauds 2 levels higher than they are. This is corroborated by the definition of "sophisticated means":

> …"sophisticated means" means especially complex or especially intricate offense conduct pertaining to the execution or concealment of an offense. For example, in a telemarketing scheme, locating the main office of the scheme in one jurisdiction but locating soliciting operations in another jurisdiction ordinarily indicates sophisticated means. Conduct such as hiding assets or transactions, or both, through the use of fictitious entities, corporate shells, or offshore financial accounts also ordinarily indicates sophisticated.

USSG §2B1.1, cmnt. 9(B). The fraud must be "notably more intricate than that of the garden-variety [offense]". (*U.S. v. Louper-Morris*, 672 F.3d 539, 564 (8th Cir. 2012) (*quoting*, *United States v. Hance,* 501 F.3d 900, 909 (8th Cir.2007)). This has somehow been lost in the

application of sophisticated means. Almost every court of record to have looked at any fraud has deemed it to be "sufficient enough" to be sophisticated.

Defendant Love refers the Court to a Sentencing Memorandum in a case that was heard before this Honorable Court entitled *United States of America v. Mark A. Morgan,* Case No. 95-cr-00125, Doc. No. 254. It appears to be some redial in the 'sufficient enough' application of sophisticated means.

In that particular case, that defendant was convicted of mail and wire fraud against the United States by misrepresenting certain computer hardware was a form of factory manufactured material, when in fact it was not. This required the defendant to have knowledge of computer systems and the working of computer parts itself. In that particular case, the Court held that that fraud did not constitute sophisticated means and the position was supported by the government by Assistant U.S. Attorney Matt Wolesky.

It is respectfully suggested that this Defendant should not be given any enhancement for sophisticated means. To the contrary, in this particular case, according to the Government's theory he mislead the State as it relates to Aid to the Blind benefits and allegedly mislead individuals as to whether he was actually a lawyer or a paralegal. This does not involve manipulation of records, uses of a computer, hiding assets in shell corporations or offshore accounts, or any type of intricate or sophisticated schemes. This is straight fraud.

In complete candor to the Court, the undersigned have located an Eight Circuit decision regarding the practice of law by a non-lawyer and the sophisticated means enhancement. However, the conduct therein was very different and much more sophisticated than Mr. Love. In *U.S. v. Kieffer*, a defendant's impersonation of an attorney was held to be sophisticated because he used a false admission to a Circuit Court of Appeals to gain admission to a District Court. 621

F.3d 825, 835 (8th Cir. 2010).  The Court held it was akin to using corporate shells.  *Id.*  Unlike *Keifer*, Mr. Love was not was not admitted to practice before any Court.  He merely held himself out to the public, mostly prisoners and their families, who knew he was a prisoner himself in many instances.  Love is well below the level of sophistication in *Keifer*.

Mr. Loves requests that the Court sustain his objection to application of the sophisticated means enhancement.

### C. The Victims Were Not Vulnerable

Mr. Love is not disputing there were victims.  He disputes who the victims were, whether they were vulnerable, and whether the government has shown enough specificity of vulnerability as opposed to mere inclusion in a class of people to qualify for the enhancement.  The PSIR and Government contend that the inmates were the victims and they were vulnerable; thus, a two-level enhancement pursuant USSG §3A1.1 should apply.  Mr. Love objected to the PSIR and disagrees with this assessment.

Section 3A.1.1 reads:

> …the court at sentencing determines beyond a reasonable doubt …
> **(b)(1)** If the defendant knew or should have known that a victim of the offense was a vulnerable victim, increase by 2 levels.

*USSG* §3A1.1.  To some extent, the language in this section in unclear.  Defendant posits that the Court to find anything in subsections (a), (b) or (c) must do so by the beyond a reasonable doubt standard instead of just preponderance.

Second, the inmates were not the victims.  Based on both the application of §2B1.1 and §3A1.1, the family members were the victims, not the inmates.  Both sections determine that the victim is the person to whom the pecuniary loss occurred.  Section 3A1.1, cmnt. 2 provides: "vulnerable victim" means a person (A) who is a **victim of the offense** of conviction and any

8

conduct for which the defendant is accountable under § 1B1.3 (Relevant Conduct); and (B) who is unusually vulnerable due to age, physical or mental condition, or who is otherwise **particularly susceptible to the criminal conduct**." (bold added).

> "Victim" means (A) any person who sustained any part of the actual loss determined under subsection (b)(1); or (B) any individual who sustained bodily injury as a result of the offense. "Person" includes individuals, corporations, companies, associations, firms, partnerships, societies, and joint stock companies.

*USSG* §2B1.1, cmnt. 1*; See also, U.S. v. Miller*, 588 F.3d 560, 567 (8th Cir. 2009) (quoting USSG §2B1.1(b)(2)(A)(i) ("'Victim' means (I) any person who sustained any part of the *actual loss…*"); *U.S. v. Quevedo*, 654 F.3d 819, 825 (8th Cir. 2011).

The unobjected to portions of the PSIR, to which the Government also did not object, demonstrate that the pecuniary loss was to the family members of the inmates, not the inmates themselves. There is no allegation or application of the guideline based on family members being vulnerable. Therefore, to the extent that the inmates are not vulnerable, there can be no application of this enhancement, as procedural due process has not been afforded to unalleged assertions of other victims. Moreover, even if the inmates were the victims, some knew Mr. Love was an inmate himself, which negates any such argument by the Government.

Further, even if the inmates were the victims, they do not qualify under the parameters of §3A1.1(b)(1). There is no evidence of the inmates age, physical or mental condition interfering with their ability to comprehend. The only stated factual basis as that the ostensible victims were inmates and could not see there was no law office attached to Mr. Love. Only a few courts in the nation have applied this distinction to inmates in non-violent crimes, but not merely because of

9

their status as inmates.[3] *U.S. v. Smith,* 464 Fed.Appx. 179, 182, 2012 WL 402028, at *2 (4th Cir. 2012); *United States v. Pierre*, 825 F.3d 1183, 1196 (11th Cir. 2016) (inmates less likely to discover identity where defendant specifically target inmates due to their perceived vulnerability).

When discussing crimes against the elderly, the Tenth Circuit has expressed "the vulnerable victim enhancement cannot be based solely on the victim's membership in a certain class; the sentencing court is required to make particularized findings of vulnerability, focusing on the individual victim and not the class of persons to which the victim belonged." *U.S. v. Smith*, 133 F.3d 737, 749 (10th Cir. 1997). Even if the Eighth Circuit were to adopt this reasoning, it should not be on the mere basis of the inmates' status as inmates. There must be some factual showing of actual vulnerability to each particular inmate.

Moreover, this goes back to the first point, and intersects with *Pierre*. Therein, the inmates had their own refunds taken. The inmates in this case were not the victims as it was not their own money that was taken. The family members are the victims as it was the family member's money that was taken. The inmates' family members would not have the same immutable characteristic that prevents them from discovering the alleged fraud – they are not incarcerated.

In short, the vulnerable victim enhancement should not apply. The Government has not fulfilled its burden of proof. The victims were not the inmates, but the family members, who are not alleged to be victims. Even if the inmates were victims, particularized data and findings as to vulnerability should be required as opposed to mere inclusion in the class of "inmate."

### III. The Ultimate Sentence

---

[3] This is far different than an inmate being the victim of a violent crime in a prison, where the inmate relies on his jailers to protect him from physical assault.

As this Court is aware, in every Federal criminal case by practice and law the Court establishes an application of the Federal Sentencing Guidelines in an appropriate guideline range. There was a period of time in which the ability to deviate, depart or vary from these guideline ranges was very limited. The law evolved over the course of time to now where these guidelines are advisory only and the court can render a sentence that does not necessarily arise within the guideline range itself. *U.S. v. Booker*, 125 S.Ct. 738, 765, 543 U.S. 220, 260 (2005)

It is Defendant's position that this case should in fact involve what it technically a variance. The events that lead to this indictment that were developed by the United States Postal Service gave rise to this Defendant being incarcerated on a parole-violators warrant as early as November 2017. The basis for that warrant were the exact same circumstances that give rise to this indictment.

However, subsequent to the ruling of parole board, this Defendant was indicted on this cause on September 12, 2018. The first time he saw counsel relative to this indictment was in October 2018. The Defendant has minimal discussions with that lawyer and subsequently that lawyer, asked leave to withdraw with at least the suggestions that this Defendant was difficult to deal with and not cooperating. In April 2019 United States Magistrate Lewanna Counts approached undersigned counsel, Charles Atwell, to represent this Defendant. Since that time, Mr. Atwell and Mr. Belancio have represented the Defendant throughout these proceedings. The Defendant has been cooperative, respectful and treated counsel with dignity. Mr. Love just wanted lawyers who would interact with him about the case, talk about the circumstances, explore options and not begin the representation by trying to tell this Defendant why he needed to plead guilty before issues were vented and the case fully discussed with Mr. Love and counsel.

As this case prepared for trial Mr. Love indicated a desire to resolve the case, and counsel entered into discussions with Ms. Mahoney and the case was resolved.

Before the Court is a 61-year-old African American male who is been in and out of the criminal justice system virtually his entire life. It is understood that his criminal history and background is a factor that this Court will consider in imposing a sentence and that is as it should be. Obviously, this is considered in the guideline computation process in that this Defendant has a criminal history category IV.

This Defendant has no friends in high places that will be asking for concessions or favors from the government. He will stand alone with appointed counsel at the time of sentencing. It is respectfully requested that he, like every other Defendant, be treated fairly and equitably. This is a case where this Defendant has served almost 45 months related to conduct that arises from a scheme that at most involved fraud of $61,000. (Some as a consequence of the parole violation and some on pre-trial detention on this case). All this Defendant asks is fairness and equitable treatment and it is urges that a sentence consistent with the government's recommendation of 46 months would be appropriate, however the Defendant requests that he be given credit for all time served, including that served on the parole violation, which would result in the equivalent of a sentence of time served.

While defendant recognizes that the same cannot be argued as a matter of law, he argues that the Court has discretion to the same as a matter of equity, and pursuant to its powers *USSG* §5G1.3(g) that it may effectively run the sentences between the parole violation and this indictment concurrently.[4] To do so, however would require the Court reduce whatever sentence

---

[4] *But see*, *USSG* §7.B1.3. The non-mandatory sentencing guidelines suggest that a parole violation and new indictments be run consecutively. This provision does not in any way impact the Court's ability to consider a variance.

it deems appropriate and reduce the same by the 22 months spent in parole violation Custody in issuing its ultimate sentence. Thus, to award a sentence of time served time served for 35 months, (*i.e.*, the 22 months on parole detention and the 13 months on detention for this indictment), a sentence of 13 months would accomplish the same. If the Court were to award the Government's request for 46 months, Mr. Love would still request the same relief of effectively awarding him 22 months credit for the time he served on parole. To accomplish the same, a sentence of 24 months would accomplish the that goal, and Mr. Love would be released approximately 11 months after his date of sentencing.

Mr. Love respect fully suggests that the ultimate sentence the Court gives should be 13 months, but that should the Court award greater that the same be no greater than 24 months.

It is also respectfully suggested by counsel that any sentence that results in significant incarceration beyond the time this Defendant has already done in CCA is not justified under the circumstances. Also, if Mr. Love's objections are sustained, he should be sentenced as Offense Level 11 with a Criminal History of 12, for a range of punishment of 24-30 months. He asks that this be taken into account when fashioning an appropriate sentence that is no longer than necessary to complete the ends of justice, and perhaps some mercy.

Respectfully Submitted,

**FOLAND, WICKENS, ROPER,
HOFER & CRAWFORD, P.C.**

*/s/ Charles E. Atwell*
CHARLES E. ATWELL  #26975
MICHAEL L. BELANCIO #50115
1200 Main Street, Suite 2200
Kansas City, MO 64105
catwell@fwpclaw.com
mbelancio@fwpclaw.com
(816) 472-7474
(816) 472-6262 Fax
*Attorneys for Defendant Leslie Love*

## CERTIFICATE OF SERVICE

I hereby certify that on this 16th day of September 2020, the foregoing was electronically filed via CM/ECF, which sent notice of such filing to the counsel of record.

Kathleen D Mahoney
United States Attorney's Office-KCMO
400 E 9th Street
Suite 5510
Kansas City, MO 64106
(816) 426-3122
(816) 426-4328 (fax)
kate.mahoney@usdoj.gov

Tom J. Black
U.S. Probation Officer
400 E 9th Street
Suite 4510
Kansas City, MO 64106
(816) 512-1300
tom_black@mow.uscourts.gov

*/s/ Charles E. Atwell*
Attorney for Defendant